Jon F. Hamilton, SBN# 232559
**FERGUSON, PRAET & SHERMAN**
A Professional Corporation
1631 East 18th Street
Santa Ana, California  92705-7101
(714) 953-5300 Telephone
(714) 953-1143 Facsimile
jhamilton@law4cops.com

Attorneys for Defendant, City of El Monte

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PROVIDENTE, | NO. CV09-3327 PSG (JWJx) |
| Plaintiff, | **DEFENDANT, CITY OF EL MONTE'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |
| vs. | |
| CITY OF EL MONTE, A Public Entity; KEN WELDON, individually and in his capacity as Chief of Police; TOM ARMSTRONG, individually and in his capacity as Assistant Chief of Police; STEVE SCHUSTER, individually and in his capacity as a Police Captain; CRAIG SPERRY, individually and in his capacity as a Police Captain; SANTOS HERNANDEZ, individually and in his capacity as a Police Lieutenant; MARTY PENNEY, individually and in his capacity as a Police Lieutenant; Lieutenant ROBERT ROACH, individually and in his capacity as a Police Lieutenant, and DOES 1 THROUGH 10 INCLUSIVE, | **DATE:**     **July 27, 2009** **TIME:**      **1:30 pm** **CTRM:**     **790** **JUDGE:**   **Philip S. Gutierrez** |
| Defendants. | |
| _____ | |

TO PLAINTIFF AND HIS COUNSEL OF RECORD:

Defendant, City of El Monte, respectfully submits the following Reply to the

Plaintiff's Opposition to the Defendant City of El Monte's Motion to Dismiss:

/ / /

/ / /

1

## **ARGUMENT**

2       There appears to be no argument between the parties as to the applicable statute

3 of limitations as it applies to both the American with Disabilities Act cause of action

4 (one-year) and the 42 U.S.C. § 1983 cause of action (two-years).  However, it does

5 appear that there is an argument as to exactly *when* the causes of action began to

6 accrue for purposes of the statue of limitations and whether the Doctrine of Equitable

7 Tolling should apply.

8 **I.**    **The Plaintiff's Cause Of Action Began To Accrue On April 28, 2007 When**

9     **The City Of El Monte Initiated An Internal Affairs Investigation Against**

10     **The Plaintiff.**

11       Although California law determines the *length* of the limitations period, federal

12 law determines when a civil rights claim *accrues*.  *Olsen v. Idaho State Bd. of Med.*,

13 363 F.3d 916, 926 (9th Cir. 2004) (quoting *Morales v. City of Los Angeles*, 214 F.3d

14 1151, 1153-54 (9th cir. 2000).  Moreover, "[the] right to be free of stale claims in time

15 comes to prevail over the right to prosecute them."  *Telegraphers v. Ry. Express*

16 *Agency*, 321 U.S. 342, 349 (1944).  Plaintiff's Opposition relies upon California State

17 law in determining when an action accrues, by stating that such an action accrues "...at

18 the moment he has a legal right to sue on it, and not earlier."  *Weinstock v. Eissler*

19 (1964) 224 Cal.App.2d 212.  However, under federal law, a claim accrues, which is

20 the date on which the statute of limitations begins to run, "when the plaintiff knows

21 or has reason to know of the injury which is the basis of the action."  *Id*. (quoting *Two*

22 *Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).  While the Plaintiff would prefer

23 the California law, it is the federal law that must be relied upon.

24       In Plaintiff's Opposition, he indicates that this date would be the date on which

25 he received notice of termination on or about April 15, 2008, because this would be

26 the date that he would have had a 'legal right' to sue.  While this date would be

27 convenient to the Plaintiff in terms of getting passed the current statute of limitations

28 challenge, the fact of the matter is that the Plaintiff would be entitled to the legal right

to sue at times earlier than a 'termination'.  Adverse employment actions against a person who exercises his or her free speech could be a thousand different things other than termination.

For example, adverse employment action can take the form of a reassignment, such as is alleged in Plaintiff's Complaint, which occurred on March 1, 2007. (Complaint, ¶57, 12:26-28).  Adverse employment action can take the form of the initiation of a "...baseless Internal Affairs investigation..." as alleged in Plaintiff's Complaint, which occurred on April 28, 2007.  (Complaint, ¶59, 13:6-7).  However, in Plaintiff's Opposition, he offers that the only possible 'adverse employment action' that can exist is 'termination'.  (Opposition, 7:27-28 to 8:1-8).

A claim accrues under federal law when the plaintiff knows or has reason to know of the actual injury.  *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  While termination may be the 'legal' injury to which the Plaintiff may point, the date of accrual is when the Plaintiff recognizes that his employer is taking adverse action against his employment as a result of his exercising freedom of speech.  Plaintiff admits in his Complaint, that he recognized an adverse employment action being taken against him on April 28, 2007, when a baseless Internal Affairs investigation was initiated against him.  (Complaint, ¶59, 13:6-7). While his 'legal' injury is claimed to be termination, it was on April 28, 2007 that he recognized a discriminatory motive behind the City of El Monte's initiation of an internal affairs investigation against him. (See *United States v. Kubrick*, 444 U.S. 111, 113 (1979)).

Whenever an internal affairs investigation is initiated and the subject officer is interrogated, that officer is entitled to a multitude of rights under California law known as the Peace Officers' Bill of Rights (POBR), California Government Code §§ 3300 et seq.  As part of these rights, the subject officer is entitled to be notified of the investigation against him and entitled to representation at any interrogation. (See California Government Code § 3303).  However, as part of this process, an officer can

be compelled to cooperate with the investigation despite an assertion of the privilege against self-incrimination under the threat of discipline, including termination, for insubordination pursuant to *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822. As a result, the initiation of an internal affairs investigation is not a casual event that is barely noticed by an employee. In fact, such an event is an 'adverse employment action' in as far as it requires the subject officer to seek representation and subject himself to an internal affairs investigation.

Pursuant to <u>California Government Code</u> § 3309.5(c), the Superior Court of California is granted jurisdiction to consider any violations of POBR at any stage of an investigation. The subject officer need not wait for some disciplinary action before he/she then has a legal right to sue. This would entitle an officer to challenge the investigation at the earliest possible stage including the moment the investigation is initiated. As evidenced by the Plaintiff's Fifth Cause of Action, he asserts that the Defendants violated his POBR rights because of his activities in the El Monte Police Officers' Association (EMPOA). It is as a result of his activities in the EMPOA as described in Paragraph 58 of the Complaint, that the 'baseless Internal Affairs investigation was initiated against him as described in Paragraph 59.

Perhaps in a typical at-will employment setting where an employer can simply walk into the office of an employee and fire him or her on the spot, 'termination' may be the first indication of an 'adverse employment action,' but such is not the case with peace officers. Pursuant to <u>California Government Code</u> §§ 3300 et seq., peace officers are entitled to ample notice of the police department's possible intended actions. While, under some circumstances, peace officers may not know the motivations behind the department's investigation, the Plaintiff himself states in the Complaint that the investigation initiated against him on April 28, 2007 was 'baseless'.

Furthermore, it was starting on April 28, 2007 that "HERNANDEZ, ROACH and BUEHLER began surveiling Plaintiff every night during Plaintiff's graveyard

shift." (Complaint, ¶59, 13:7-10). Plaintiff's contentions in the Complaint are that these actions taken against him were as a result of his participation with the EMPOA.

While Plaintiff argues that the date of an 'adverse employment action' should be the date that he is terminated because, otherwise, the Department will just wait until the expiration of the statute of limitations before terminating a peace officer. However, what the Plaintiff failed to mention to the court is that there is a one-year statute of limitations that an employer must adhere to in order to discipline an officer for any misconduct. (See <u>California Government Code</u> § 3304(d)). This is certainly less than the two-year statute of limitations for a 42 U.S.C. § 1983 claim. To suggest that the only way for there to be an 'adverse employment action' is through termination alone, ignores the multitude of other 'adverse employment actions' that could occur without termination.

Thus, it is clear, that the 'adverse employment actions' taken against the Plaintiff could have been his reassignment to patrol on March 1, 2007, or the 'baseless internal affairs investigation' initiated against him on April 28, 2007 or while under surveillance by El Monte police officers on April 28, 2007 and after. It is clear from the language of the Plaintiff's Complaint that it was at this time that he knew that his employer began to take action against him and it is for this reason that this is the time that the statute of limitations began to accrue.

Because the date of accrual for the present action is the date that the City of El Monte initiated its internal affairs investigation against the Plaintiff, the statute of limitations on both the American with Disabilities Act claim (one-year) and the 42 U.S.C. § 1983 claim (two-years) have expired. Because there is a lack of subject matter jurisdiction over these claims, it is respectfully requested that these causes of action be dismissed with prejudice.

Furthermore, as it pertains to the Americans with Disabilities Act cause of action and unless equitable tolling principles apply, the Plaintiff had, at most, 300 days from the last act of discrimination to file a charge with the EEOC. *See* 42 U.S.C.

1  §§ 12117(a), 2000-e(5)(e)(1); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107
2  (9th Cir. 1998) (300-day limitations period is subject to equitable tolling).  The
3  Plaintiff never filed such a complaint as required.

4        Both of the Plaintiff's federal causes of action are stale as a result of the
5  expiration of the statute of limitations.

6  **II.**   **Equitable Tolling Does Not Apply To The Instant Action**

7        "Equitable tolling" focuses on "whether there was excusable delay by the
8  plaintiff: If a reasonable plaintiff would not have known of the existence of a possible
9  claim within the limitations period, then equitable tolling will serve to extend the
10 statute of limitations for filing suit until the plaintiff can gather what information he
11 needs." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  Plaintiff appears
12 to rely upon *Daviton v. Columbia/HCA Healthcare Corp.* to argue that his claims have
13 been equitably tolled.

14       In *Daviton*, the plaintiffs filed an administrative complaint as required by 42
15 U.S.C. §§ 12117(a), 2000-e(5)(e)(1)against the defendants alleging disability
16 discrimination and, after their administrative complaint had been heard and decided,
17 they filed an American with Disabilities Act complaint.  In the instant action, the El
18 Monte Police Department has disciplined the Plaintiff for misconduct and he is
19 appealing that misconduct.  He has not initiated any administrative complaint against
20 the City of El Monte or any of its employees for disability discrimination nor has he
21 initiated a workers' compensation claim for his alleged disability.  In fact, the only
22 administrative action pending against the Plaintiff is the one initiated by the El Monte
23 Police Department to terminate the Plaintiff for his misconduct.  While he has perhaps
24 attempted to generate a disability discrimination complaint as a defense to the
25 discipline he has received for his misconduct, he has not initiated any sort of
26 administrative complaint alleging disability discrimination.  Thus, *Daviton* and the
27 present action are distinguishable.  Because the Plaintiff did not timely file an EEOC
28 charge with facts to support equitable tolling, equitable tolling would not apply.  See

1   *Scholar v. Pacific Bell*, 963 F.2d 264, 268 (9th Cir. 1992) (claimant who fails to

2   exercise due diligence in preserving legal rights is generally not entitled to equitable

3   tolling.).

4   However, *Daviton* does offer the test that must be considered in determining

5   whether equitable tolling would apply to either of the Plaintiff's federal causes of

6   action once the statute of limitations has caused the claims to become stale.   As

7   *Daviton* outlines, the doctrine is appropriately applied where the facts demonstrate

8   "(1) timely notice of the defendant in filing the first claim; (2) lack of prejudice to the

9   defendant in gathering evidence to defend against the second claim; and, (3) good

10  faith and reasonable conduct by the plaintiff in filing the second claim."   *Daviton v.*

11  *Columbia/HCA Healthcare Corp.*, 241 F.3d at 1137-1138.

12  The facts alleged in the Complaint do not establish a ground for applying the

13  equitable tolling doctrine.   First, there was no formal complaint filed by the Plaintiff

14  to the City of El Monte or to an outside state or federal employment agency to put the

15  City of El Monte on notice of a claim for disability discrimination or for the alleged

16  violation of his First Amendment right to Freedom of Speech.   The only document

17  filed by the Plaintiff was his notice of appeal for his termination for misconduct.   As

18  Plaintiff's Complaint alleges, the investigation and subsequent termination for cause

19  was based upon the Plaintiff's sleeping on duty, early departure of duty times, playing

20  baseball and conduct unbecoming an officer.   (Complaint, ¶66, 14:1-2).   While

21  Plaintiff's perceptions may be that the City terminated him in retaliation for his

22  alleged disability and for his exercising his right to freedom of speech, his perception

23  cannot be deemed notice to the City unless he actually complained about it.   This lack

24  of notification has prevented the City from investigating any claims of retaliation,

25  whether for a claim of disability discrimination or for retaliation against freedom of

26  speech.

27  Thus, the second prong of the equitable tolling test has not been met because

28  the "the facts of the two claims [must be] identical or at least so similar that the

defendant's investigation of the first claims will put him in a position to fairly defend the second." *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 925.  Because the Plaintiff never filed a 'first complaint' that specifically addressed his claim of disability discrimination or for a violation of his right to freedom of speech, it is impossible to link charges of administrative misconduct for sleeping on duty, early departure of duty times, playing baseball and conduct unbecoming to the present Complaint.  The decision to terminate the Plaintiff from employment for misconduct certainly is not identical or at least similar to the pending Complaint.

As for the third prong, it is difficult to allege that the Plaintiff exercised good faith and reasonable conduct in the filing of this Complaint when he never preserved his rights by filing any initial complaint with the City or outside employment agency. It appears that this present Complaint is an outgrowth of affirmative defenses the Plaintiff is attempting to use to challenge his termination and, perhaps, his hope is that this Complaint filed in federal court will offer him some negotiating leverage in the employment termination case now pending before an administrative hearing board.

For these reasons, equitable tolling would not apply and, accordingly, both federal causes of action should be dismissed.

**III.**     **The First Amendment Retaliation Claim Against The City Of El Monte Does Not Involve A Matter Of Public Concern And, Thus, Must Be Dismissed.**

In an opinion filed on July 13, 2009 involving Plaintiff's counsel, Lackie, Dammeier & McGill, the Ninth Circuit addressed directly the issue of whether police officers' complaints about their supervisors' conduct may give rise to a constitutional violation in *Desrochers v. City of San Bernardino*, 2009 U.S. App. LEXIS 15400.  In *Desrochers*, two officers complained that they were being retaliated against because of speech.  The Court first looked at whether the speech addressed a matter of public concern, the content of which must involve "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the

1   operation of their government." *Desrochers*, 2009 U.S. App. LEXIS at 16-17 (citing
2   *McKinley v. Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983); see also *Gillette v. Delmore*,
3   886 F.2d 1194, 1197 (9th Cir. 1987)).  "On the other hand, speech that deals with
4   'individual personnel disputes and grievances' and that would be of 'no relevance to
5   the public's evaluation of the performance of governmental agencies' is generally not
6   of 'public concern'."  See *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.
7   2003).

8        While the Plaintiff here attempts to classify his speech as that of 'public
9   concern' it is nothing more than his own grievance for his individual personnel
10  dispute regarding his termination for misconduct.  This Complaint concerns only
11  allegations that the City of El Monte took retaliatory action against the Plaintiff as an
12  individual member of the EMPOA.  However, while Plaintiff was just one member
13  of the EMPOA Board that made multiple decisions to audit the police department and
14  oppose "Measure P," there is no allegation that any retaliatory action took place by
15  the City of El Monte and other EMPOA Board members or against the EMPOA itself.
16  Thus, the Plaintiff's Complaint is that of an individual personnel nature designed to
17  assist him in the appeal of his termination for cause.

18       Furthermore, any form of speech by the Plaintiff took place privately and not
19  in a public forum and, accordingly, the public was never made aware of any of the
20  Plaintiff's grievances.  Specifically, the Complaint alleges that all forms of speech
21  made by the Plaintiff were contained within EMPOA Board meeting, wherein union
22  members discuss their satisfaction or dissatisfaction as it pertains to employer-
23  employee relations.  While the Plaintiff alleges that the City was not happy with the
24  selection of their new law firm to represent them on labor disputes, this is certainly a
25  matter of internal dispute between the union and management.

26       The Complaint alleges facts that begin as long ago 1997 or 1998 that the
27  Plaintiff identifies as the beginning of his dispute with his employer.  (Complaint,
28  ¶38).  Despite this dispute, the Plaintiff actively engaged himself in a position with his

labor union to continue his disputes with the City.  Here, the speech complained of is "mere[ly an] extension[]" of the running spat between the City and the Plaintiff.  See *Voigt v. Savell*, 70 F.3d 1552, 1560 (9th Cir. 1995)(describing speech as an "extension of a personal dispute" between coworkers).

To further demonstrate that the dispute at issue here is personal is that he files this Complaint long after the allegations of wrongdoing have passed and after he was terminated.  The form of Plaintiff's speech was made to a private audience (other union members and co-workers) and never was made to the press, which should lead to the conclusion that the speech does not involve matters of public concern.  See *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995).  Because Plaintiff's grievance was motivated by a personnel dispute, and the Plaintiff's concerns were never related to the public or press, the Plaintiff's speech is most accurately characterized as an employee grievance concerning internal office matters.  See *Connick v. Myers*, 461 U.S. 138, 154 (1983); *Desrochers*, 2009 U.S. App. LEXIS at 42.

For the foregoing reasons, the Plaintiff cannot meet the threshold requirement to state a First Amendment retaliation claim under 42 U.S.C. § 1983.

Dated:  July 20, 2009                        Respectfully submitted,

                                             FERGUSON, PRAET & SHERMAN
                                             A Professional Corporation

                        By:        /s/ Jon F. Hamilton
                                   Jon F. Hamilton
                                   Attorneys for Defendant, City of El Monte

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Michele Koller, employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action.  My business address is 1631 East 18th Street, Santa Ana, California  92705-7101.

On July 20, 2009, served the **DEFENDANT, CITY OF EL MONTE'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

**Rana M. Kawar
LACKIE, DAMMEIER & McGILL, APC
367 North Second Avenue
Upland, California 91786
Phone 909-985-4003
Fax 909-985-3299
Email rkawar@bjslawfirm.com**

\_\_\_\_    (By Mail)  I placed such envelope for deposit in accordance with office practice, sealed, with postage thereon fully paid and the correspondence to be deposited in the United States mail at Santa Ana, California on the same day.

XXX    (By e-filing) The above noted individuals are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

\_\_\_\_    (By Personal Service) I caused such envelope to be delivered by hand to the office of the addressee.

\_\_\_\_    (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

XXX    (Federal)  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 20, 2009, at Santa Ana, California.

_/s/ Michele Koller_____
Michele Koller