O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|---|---|---|---|
| Title | Michael Providente v. City of El Monte | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(In Chambers) Order Granting in Part and Denying in Part Defendants' Motion to Dismiss**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint.  The Court finds the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving and opposing papers, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

I.    Background

On May 11, 2009, Michael Providente ("Plaintiff") filed this action against the City of El Monte (the "City"); Ken Weldon ("Weldon"), individually and in his capacity as Chief of Police; Tom Armstrong ("Armstrong"), individually and in his capacity as the Assistant Chief of Police; Steve Schuster ("Schuster") and Craig Sperry ("Sperry"), individually and in their capacities as police captains; and Santos Hernandez ("Hernandez"), Marty Penney ("Penney"), and Robert Roach ("Roach"), individually and in their capacities as police lieutenants (collectively, with the foregoing city employees and the City, "Defendants").  The complaint asserts two federal claims brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, and 42 U.S.C. § 1983, and six state law claims.

In his complaint, Plaintiff alleges that the City hired him as a peace officer in November of 1995.  He served in that position until the City terminated him on April 15, 2008.  Plaintiff also alleges that during his tenure as a peace officer he was a member of the El Monte Police Officers' Association ("EMPOA").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|---|---|---|---|
| Title | Michael Providente v. City of El Monte | | |

Beginning in 1997 or 1998, Plaintiff began having trouble with his supervisors.  For instance, sometime in 1997 or 1998, Plaintiff and another police officer conducted a traffic stop between 3:30 a.m and 4:00 a.m.  Plaintiff requested help from a supervisor, only to receive criticism from that supervisor in lieu of assistance.  Apparently, the El Monte Police Department (the "Department") had a long-standing policy and practice of "shutting-down" graveyard and early morning shifts, which Plaintiff suggests was in place to allow other officers to get sleep in the early morning hours.  Another example of Plaintiff's problems with his supervisors occurred in 2000.  That year, one of Plaintiff's supervisors scolded him because, contrary to that supervisor's request, Plaintiff pursued arrest charges against a subject that was a personal acquaintance of the supervisor.

Plaintiff's troubles continued into April of 2006.  At the beginning of that month, Department administrators advised Plaintiff and his fellow officers that there would be an upcoming special election seeking passage of "Measure P" to address the City's mounting deficit.  These administrators attended briefings, warned of lay-offs, strongly encouraged officers to actively push for the measure's success, and utilized the City's resources to campaign in support of Measure P.  On May 5, 2006, Plaintiff, during an EMPOA membership meeting, openly protested against using EMPOA funds to support Measure P.  Plaintiff later further expressed his lack of support for Measure P when he removed Measure P signs that someone had, without his permission, placed on his lawn.  Plaintiff's involvement with the EMPOA extended beyond the Measure P campaign.  For instance, Plaintiff, on behalf of the EMPOA, helped acquire the services of Harvey Rose and Associates to conduct an audit of the City's budget and finances.  He was also instrumental in persuading EMPOA membership to obtain new general counsel sometime between February and March of 2007.

According to Plaintiff, he consistently received threats, both explicit and implicit, from his supervisors whenever he took action with which they disagreed.  Furthermore, beginning on March 1, 2007, Defendants began taking adverse action against Plaintiff.  For example, on March 1, 2007, Plaintiff was reassigned to a patrol team under Hernandez' supervision.  Months later, on April 28, 2007, Hernandez allegedly initiated a "baseless" Internal Affairs investigation of Plaintiff for "sleeping on duty."  Then, in September of 2007, Plaintiff was ordered to surrender his department-issued cell phone, informed that he was the focus of an upcoming Internal Affairs investigation, and eventually placed on paid administrative leave.  Subsequently, Plaintiff was removed from duty pending an MRI on his lower back on January 8, 2008.  One month later, on February 6, 2008, he was given a notice of "Intent to Terminate" and a *Skelly* package while he was at Methodist Hospital.  Then, on March 13, 2008, the City offered Plaintiff a medical retirement in lieu of any discipline arising out of his employment.  Plaintiff

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|----------|------------------------|------|-----------------|
| Title | Michael Providente v. City of El Monte | | |

accepted this offer the next day.  However, on March 26, 2008, Plaintiff was informed that the City no longer wanted to proceed with the medical retirement process, and instead purported to rescind the offer.  Plaintiff was then allegedly told that the Department would proceed with his termination unless Plaintiff resigned.  Plaintiff refused to do so and, on April 15, 2008, he was terminated.

Presently, Defendants move to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  In short, Defendants argue that Plaintiff's federal claims are barred by the applicable statute of limitations.

## II.   Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a claim if the claimant fails to state a claim upon which relief can be granted.  In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules require only that the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Nevertheless, even though a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted).  Rather, the complaint must allege sufficient facts to raise a right to relief above the speculative level.  *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  Importantly, though, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

In deciding a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), and must also construe all reasonable inferences in the light most favorable to the plaintiff.  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

## III.   Discussion

Presently, Defendants move to dismiss Plaintiff's seventh cause of action, brought under the ADA, and Plaintiff's eighth cause of action, brought under 42 U.S.C. § 1983, on the ground

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|----------|------------------------|------|-----------------|
| Title | Michael Providente v. City of El Monte | | |

that both are barred by the applicable statute of limitations. In opposition, Plaintiff argues that his ADA claim is timely under the doctrine of equitable tolling and contends that, contrary to Defendants' arguments otherwise, his § 1983 claim is in fact timely.

A.   Plaintiff's ADA Claim

Defendants argue that Plaintiff's ADA claim is untimely because it is barred by a one-year statute of limitations.[1] In his opposition brief, Plaintiff concedes that a one-year limitations period applies to his ADA claim, but nevertheless contends that it is timely under the doctrine of equitable tolling. However, as explained below, the Court disagrees with both parties, finding instead that a one-year limitations period does not apply to Plaintiff's ADA claim and that this claim is timely under the applicable limitations period, thus eliminating any need to apply the doctrine of equitable tolling.

The ADA does not contain a statute of limitations. *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002). Consequently, the Court must apply the statute of limitations of the most analogous state law. *Id.* To date, the Ninth Circuit has never determined which of California's laws is most analogous to the ADA. It has, however, observed in dicta that most district courts have applied California's limitations period for personal injury actions to federal disability discrimination claims brought in California. *Id.* However, it has also discussed at length the significant similarity between the ADA and the Unruh Act, Cal. Civ. Code § 51. *See Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1029-32 (9th Cir. 2003). As for the lower courts, there is a definitive split amongst them as to which of these two statutes is most analogous to the ADA. Some courts, for instance, have applied California's personal injury statute to ADA claims brought in California. *See, e.g.*, *Alberti v. City and County of San Francisco Sheriff's Dep't*, 32 F. Supp. 2d 1164, 1172 (N.D. Cal. 1998). More recent cases, however, have applied the Unruh Act. *See, e.g.*, *K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860, at *8-9 (N.D. Cal. Mar. 23, 2007); *Kramer v. Regents of University of California*, 81 F. Supp. 2d 972, 973 (N.D. Cal. 1999). Ultimately, though, this Court need not decide whether to apply California's personal injury statute or the Unruh Act for, as explained below, regardless of which statute the Court applies, Plaintiff's claims are timely.

---

[1] Defendants also argue that this claim should be dismissed because Plaintiff failed to timely file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 12117(a), 2000-e(5)(e)(1). However, because this argument was first presented to the Court in Defendants' reply brief, the Court declines to consider it. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|----------|------------------------|------|------------------|
| Title | Michael Providente v. City of El Monte | | |

The limitations period for California's personal injury statute is two years.[2]  *See* Cal. Civ. Proc. § 335.1.  The limitations period for the Unruh Act is, however, a bit more complicated. Like the ADA, the Unruh Act does not contain a statute of limitations.  Consequently, courts have been forced to decide what limitations period applies to claims brought under the Unruh Act.  Some courts have held that the statute of limitations should draw from the two-year statute of limitations applicable to personal injury actions in California.  *See, e.g., Gatto v. County of Sonoma,* 98 Cal. App. 4th.744, 760, 120 Cal. Rptr. 2d 550 (Cal. Ct. App. 2002) (applying the then one-year statute of limitations to an Unruh Act claim); *Mitchell v. Sung,* 816 F. Supp. 597, 602 (N.D. Cal. 1993) (same). Other courts have applied a three-year statute of limitations to claims under the Unruh Act.  *See, e.g., Kramer,* 81 F. Supp. 2d at 978; *see also Olympic Club v. Those Interested Underwriters at Lloyd's London,* 991 F.2d 497, 501 n. 11 (9th Cir. 1993) (indicating in dicta that the three year statute of limitations of California Code of Civil Procedure section 338(a) should apply to claims under the Unruh Act).  In any event, what is clear is that, at the very least, a two-year limitations period applies to the Unruh Act.  What is also clear is that all the relevant events to Plaintiff's ADA claim occurred within two years of the date he filed his complaint: May 11, 2009.

According to the complaint, the relevant medical disability suffered by Plaintiff occurred on or about January 8, 2008.  *Compl.* ¶ 65.  At that time, he was removed from duty pending an MRI of his lower back.  *Id.*  One month later, on February 6, 2008, a lieutenant and sergeant delivered to Plaintiff while he was at Methodist Hospital a notice of "Intent to Terminate" and a *Skelly* package.  *Id.* at ¶ 66.  Then, on March 13, 2008, an attorney for the City offered to Plaintiff a medical retirement in lieu of any discipline arising out of his employment with the City, which Plaintiff accepted the very next day.  *Id.* at ¶¶ 69-70.  However, approximately two weeks later, the assistant chief of police for the Department informed Plaintiff that the medical retirement process was "too lengthy," purported to rescind the City's offer of medical retirement, and told Plaintiff that the Department would proceed with his termination unless Plaintiff resigned.  *Id.* at ¶ 71.  Plaintiff refused to resign and the next day, after he was served with termination documents, he gave the Department a Notice of Appeal.  *Id.* at ¶¶ 71-72.  Plaintiff was then terminated on April 15, 2008.  *Id.* at ¶ 73.

---

[2] Prior to 2003, California's statute of limitations for personal injury actions was one year.  *See* Cal. Civ. Proc. Code § 340.3 (West Supp. 2002).  However, effective January 1, 2003, the new California statute of limitations for assault, battery, and other personal injury claims is two years instead of one.  Cal. Civ. Proc. Code § 335.1.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|----------|------------------------|------|-----------------|
| Title | Michael Providente v. City of El Monte | | |

As the foregoing recap of the relevant events demonstrates, all of the conduct material to Plaintiff's ADA claims occurred less than two years prior to Plaintiff filing his complaint. Thus, if the Court applies California's personal injury statute to Plaintiff's ADA claim, it is timely. Likewise, if the Court applies either of the two limitations periods for the Unruh Act, Plaintiff's ADA claim is timely. For these reasons, then, the Court rejects Defendants' argument that Plaintiff's ADA claim is untimely and, therefore, denies their Motion to Dismiss insofar as it relates to Plaintiff's ADA claim.[3]

B.    Plaintiff's § 1983 Claim

Defendants also argue that Plaintiff's § 1983 claim is untimely.[4] "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citation omitted); *see also Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-84, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). As noted above, California's statute of limitations for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1. However, while state law governs the substantive limitation period, federal law determines when a civil rights action accrues and, therefore, when the statute of limitations begins to run. *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986). Under federal law, a federal claim accrues when the plaintiff "'knows or has reason to know of the injury which is the basis of the action.'" *Id.* (quoting *Trotter v. Int'l Longshoremen's & Warehousemen's Union*, 704 F.2d 1141, 1143 (9th Cir. 1983)); *see also Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).

The parties do not dispute that this action concerns certain events that occurred between November of 1995, the date the City hired Plaintiff as a peace officer, and April 15, 2008, the date the City allegedly unlawfully terminated Plaintiff. However, the parties disagree over exactly when Plaintiff's claim began to accrue. It is Defendants' position that Plaintiff's claim began to accrue, at the latest, in February or March of 2007. If they are correct, then the two-

---

[3] Obviously, if the claim is timely, there is no need to determine whether the doctrine of equitable tolling applies to the claim. Accordingly, the Court declines to do so.

[4] Additionally, Defendants argue that this claim fails because it does not involve a matter of public concern. However, like Defendants' argument concerning Plaintiff's alleged failure to file a complaint with the EEOC, this argument was raised for the first time in Defendants' reply brief. Consequently, the Court declines to consider it. *See Eberle*, 901 F.2d at 818.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
| --- | --- | --- | --- |
| Title | Michael Providente v. City of El Monte | | |

year statute of limitations that applies to this cause of action would indeed bar Plaintiff's § 1983 claim, for he did not file his complaint until May of 2009. However, Plaintiff argues that his cause of action did not begin to accrue until April 15, 2008, the date he was allegedly unlawfully terminated for exercising his free speech rights.[5] If Plaintiff is correct, then his § 1983 claim is indeed timely, for it was filed within the two-year statute of limitations.

As an initial matter, the Court notes that it is rather unclear exactly what events ground Plaintiff's § 1983 claim. However, it is clear that Plaintiff first began exercising his first amendment rights in April of 2006. That month, Department administrators advised officers that there would be an upcoming special election seeking passage of Measure P. *Compl.* ¶ 41. One month later, on May 5, 2006, Plaintiff, during an EMPOA membership meeting, openly protested against using EMPOA funds to support Measure P. *Id.* at ¶ 46. Approximately three weeks after that, on June 1, 2006, an on-duty detective went to Plaintiff's residence and asked Plaintiff why he had removed certain bright-yellow Measure P lawn signs from his property. *Id.* at ¶ 47. Plaintiff informed the detective that those signs had been placed there without his permission. *Id.* Five days later, Measure P was defeated at the election. *Id.* at ¶ 48. Subsequent to the defeat of "Measure P," Plaintiff, on behalf of the EMPOA, helped acquire the services of Harvey Rose and Associates to conduct an audit of the City's budget and finances. *Id.* at ¶ 49. Then, on September 26, 2006, Plaintiff met with Armstrong and reported, among other things, that Roach had committed Peace Officer Bill of Rights violations during Internal Affairs investigations of EMPOA members; Hernandez had improperly initiated baseless Internal Affairs complaints against EMPOA members; Hernandez had acted unlawfully during the Measure P campaign; and that the Department was covering up a case of suspected sexual abuse because the alleged perpetrator had a connection with the Department. *Id.* at ¶¶ 43, 50. Months later, after Plaintiff was elected as treasurer of the EMPOA Board, *id.* at ¶ 54, Plaintiff was instrumental in getting EMPOA membership to obtain new general counsel. *Id.* at ¶ 58. Allegedly, this angered the Department and the City for the predecessor attorney was a good friend of the administration. *Id.*

What is also clear is that Plaintiff believes that Defendants retaliated against him for exercising apparent act reassigned Then, on

his first amendment rights in the foregoing instances. The first of retaliation took place on March 1, 2007, when Plaintiff was to a patrol team under Hernandez' supervision. *Id.* at ¶ 57. April 28, 2007, Hernandez initiated a "baseless" Internal

O

---

[5] Plaintiff does not argue that equitable tolling applies to his § 1983 claim. For that reason, the Court declines to consider the applicability of that doctrine to Plaintiff's § 1983 claim.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|----------|------------------------|------|-----------------|
| Title | Michael Providente v. City of El Monte | | |

Affairs investigation of Plaintiff because he was allegedly "sleeping on duty." *Id.* at ¶ 59. Hernandez and others began surveilling Plaintiff every night thereafter. *Id.* Other alleged acts of retaliation took place between the fall of 2007 and the spring of 2008.   For instance, on September 10, 2007, Roach ordered Plaintiff to surrender his department-issued cell phone. *Id.* at ¶ 61.  A few days later Plaintiff was placed on paid administrative leave. *Id.* at ¶ 62.  He was then given a notice of Intent to Terminate and a *Skelly* package on February 6, 2008.  *Id.* at ¶ 66. Lastly, he was allegedly unlawfully terminated on April 15, 2008.  *Id.* at ¶ 73.

In deciding when the statute of limitations commences to run under § 1983, this Court must "identify precisely" when the deprivation forbidden by § 1983 occurred.  *See Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983).  However, as a leading treatise notes, "it is not always easy to determine whether a claimant alleges a single wrong, a series of separate acts for which the limitation period begins anew for each violation, or a violation resulting from implementation of a continuing illegal practice or policy."  Martin A. Schwartz, Section 1983 Litigation Par. 12.03[B], p. 12-60 (4th ed. 2009).

Because the complaint in this case is vague and ambiguous, it is difficult for the Court (and Defendants for that matter) to fully understand the scope of Plaintiff's § 1983 claim.  If the acts of retaliation all relate to the same underlying incident, then it would seem that the acts of retaliation would constitute a single wrong and, therefore, Plaintiff's claim would be time-barred since the first act of retaliation occurred more than two prior years before he filed his complaint. However, if the acts of retaliation relate to different underlying incidents, then the acts of retaliation would have to be evaluated and examined separately.

In light of the foregoing deficiencies, the Court finds that Plaintiff has failed to allege sufficient facts to raise a right to relief above the speculative level.  *See Twombly*, 127 S. Ct. at 1965.  Accordingly, the Court grants Defendants' Motion to Dismiss, without prejudice, insofar as it relates to Plaintiff's § 1983 claim.

## IV.   Conclusion

Based on the foregoing, the Court DENIES Defendants' Motion to Dismiss insofar as it relates to Plaintiff's ADA claim, but GRANTS it insofar as it relates to Plaintiff's § 1983 claim. The Court also grants Plaintiff leave to file an amended complaint by **September 3, 2009**.

**IT IS SO ORDERED.**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3327 PSG (JWJx) | Date | August 13, 2009 |
|---|---|---|---|
| Title | Michael Providente v. City of El Monte | | |