1   Dieter C. Dammeier SBN. 188759
    Michael A. McGill, Esq.  SBN 231613
2   Rana M. Kawar, Esq.      SBN 244341
    LACKIE, DAMMEIER & MCGILL APC
3   367 North Second Avenue
4   Upland, California 91786
5   Telephone:  (909) 985-4003
    Facsimile:  (909) 985-3299
6   NO EMAIL ADDRESS
    Attorneys for Plaintiff
7   MICHAEL PROVIDENTE

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA - EL MONTE

11  MICHAEL PROVIDENTE,                CASE NO.: CV 09-3327 PSG (JWJx)

12                      Plaintiff,     *Honorable Phillip S. Guiterrez*

13              vs.                    **FIRST AMENDED COMPLAINT FOR
                                       DAMAGES AND INJUNCTIVE AND
14  CITY OF EL MONTE, A Public         DECLARATORY RELIEF BASED ON:**
    Entity; KEN WELDON, individually
15  and in his capacity as Chief of    **1. Disability Discrimination, Cal. Govt.
    Police; TOM ARMSTRONG,                Code §12940** *et seq.*
16  individually and in his capacity as
    the Assistant Chief of Police;     **2. Retaliation, Labor Code §1102.5** *et.*
17  STEVE SCHUSTER, individually          *seq.*
    and in his capacity as a Police
18  Captain; CRAIG SPERRY,             **3. Ralph Act, Cal. Civ. Cd. §51.7**
    individually and in his capacity as a
19  Police Captain; SANTOS             **4. Bane Act, Cal. Civil Code §52.1**
    HERNANDEZ, individually and in
20  his capacity as a Police Lieutenant; **5. Union Busting, Govt. Cd. §§3302** *et.*
    MARTY PENNEY, individually and       *seq.*
21  in his capacity as a Police
    Lieutenant; Lieutenant ROBERT      **6. Cal.  Const., Article I, §§2, 3**
22  ROACH, , individually and in his
    capacity as a Police Lieutenant and **7. Americans with Disabilities Act, §42
23  DOES 1 THROUGH 10                     U.S.C. 1201** *et. seq.*
    INCLUSIVE;
24                                     **8. Civil Rights, 42 U.S.C. §1983**

25                      Defendants     **DEMAND FOR JURY TRIAL**
                                       **F.R. Civ. P. Rule 38**
26  _____   **C.D. Cal. Local Rule 38-1**

27

28

FILED
2009 SEP -3  PM 2:50
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

**FIRST AMENDED COMPLAINT**

COMES NOW, MICHAEL PROVIDENTE, who demands a jury trial and seeks monetary compensation and injunctive relief against DEFENDANTS on each of the following causes of action.

## I.  PREFATORY

1.    This is an action for damages and injunctive relief for violations of Michael Providente's civil rights pursuant to 42 U.S.C. §1983, state labor and civil code violations, unlawful termination, retaliation, and disability discrimination under both state and federal law.  See Cal. Govt. Code §12940 *et seq.*; 42 USC §§ 12101-12214, 29 USC §§ 793, 794, Executive Order 11246 Defendants, who include his former employer and high-ranking City officials, unlawfully retaliated and took myriad adverse actions against Plaintiff solely because Plaintiff lawfully exercised his individual civil rights and liberties of free expression and association, his exercise of lawful labor organizational, social and political activities, and his opposition to systemic police corruption and for asserting his rights as someone with a disability and medical condition.

## II. JURISDICTION AND VENUE

2.    Plaintiff's action is authorized by 42 U.S.C. §1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States.  Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3) which provides for jurisdiction in this Court of suits authorized by 42 U.S.C. §1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States and also by 28 U.S.C. §1343(4) which provides for protection of civil rights.

3.    Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.

**FIRST AMENDED COMPLAINT**

4.     This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§2201 and 2202.

5.     Venue is proper in the Central District of California because the wrongs alleged herein occurred within City of El Monte, County of Los Angeles, located in the Central District.

## III.     PARTIES

6.     Plaintiff was, at all times relevant to the allegations contained herein, a resident of Los Angeles County, State of California.  Plaintiff's home address is confidential under Cal. Penal Code §§146(e) and 832.7, and Cal. Vehicle Code §1808.4(a)(11).

7.     Plaintiff, at all times relevant to the allegations contained herein, was employed by CITY OF EL MONTE ("CITY") for approximately thirteen years as a peace officer with the El Monte Police DEPARTMENT ("DEPARTMENT").

8.     Plaintiff has also served as a member of the El Monte Police Officers' Association ("EMPOA").

9.     CITY is a duly enacted municipality organized and existing under the laws of the State of California and wholly situated in the County of Los Angeles. DEPARTMENT is an operating Department, Agency, and/or Office of CITY.

10.     Defendant KEN WELDON ("WELDON") was, at all times relevant to the allegations contained herein, employed by CITY as the Chief of Police for the DEPARTMENT.  In doing the things alleged herein, WELDON acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a CITY department Head, Manager and/or Supervisor, WELDON has and is vested with policy-making authority over actions such as the ones at issue herein.

3

**FIRST AMENDED COMPLAINT**

11. Upon information and belief, WELDON is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

12. WELDON, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

13. Defendant TOM ARMSTRONG ("ARMSTRONG") was, at all times relevant to the allegations contained herein, employed by CITY as the Assistant Chief of Police for DEPARTMENT. In doing the things alleged herein, ARMSTRONG acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY. As a CITY department Head, Manager and/or Supervisor, ARMSTRONG has and is vested with policy-making authority over actions such as the ones at issue herein.

14. Upon information and belief, ARMSTRONG is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

15. ARMSTRONG, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

16. Defendant STEVE SCHUSTER ("SCHUSTER") was, at all times relevant to the allegations contained herein, employed by CITY as a Police Captain for DEPARTMENT. In doing the things alleged herein, SCHUSTER acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY. As a CITY department Head, Manager and/or Supervisor, SCHUSTER has and is vested with policy-making authority over actions such as the ones at issue herein.

17. Upon information and belief, SCHUSTER is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

18. SCHUSTER, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

FIRST AMENDED COMPLAINT

19.     Defendant CRAIG SPERRY ("SPERRY") was, at all times relevant to the allegations contained herein, employed by CITY as a Police Captain for the DEPARTMENT.  In doing the things alleged herein, SPERRY acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a CITY department Head, Manager and/or Supervisor, SPERRY has and is vested with policy-making authority over actions such as the ones at issue herein.

20.     Upon information and belief, SPERRY is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

21.     SPERRY, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

22.     Defendant SANTOS HERNANDEZ ("HERNANDEZ") was, at all times relevant to the allegations contained herein, employed by CITY as a Police Lieutenant and held other ranks for the DEPARTMENT.  In doing the things alleged herein, HERNANDEZ  acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a City department Head, Manager and/or Supervisor, HERNANDEZ  has and is vested with policy-making authority over actions such as the ones at issue herein.

23.     Upon information and belief, HERNANDEZ  is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

24.     HERNANDEZ, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

25.     Defendant MARTY PENNEY ("PENNEY") was, at all times relevant to the allegations contained herein, employed by CITY as a Police Lieutenant and held other ranks for the DEPARTMENT.  In doing the things alleged herein, PENNEY acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a CITY department

5

Head, Manager and/or Supervisor, PENNEY has and is vested with policy-making authority over actions such as the ones at issue herein.

26.     Upon information and belief, PENNEY is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

27.     PENNEY, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

28.     Defendant ROBERT ROACH ("ROACH") was, at all times relevant to the allegations contained herein, employed by CITY as a Police Lieutenant and held other ranks for the DEPARTMENT.  In doing the things alleged to have been done herein, ROACH acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a City DEPARTMENT Head, Manager and/or Supervisor, ROACH has and is vested with policy-making authority over actions such as the ones at issue herein.

29.     Upon information and belief, ROACH is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

30.     ROACH, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

31.     Defendant DAN BUEHLER ("BUEHLER") was, at all times relevant to the allegations contained herein, employed by CITY as a Police Lieutenant and held other ranks for the DEPARTMENT.  In doing the things alleged to have been done herein, BUEHLER acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a City DEPARTMENT Head, Manager and/or Supervisor, BUEHLER has and is vested with policy-making authority over actions such as the ones at issue herein.

32.     Upon information and belief, BUEHLER is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

FIRST AMENDED COMPLAINT

33.     BUEHLER, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, and is being sued individually.

34.     Defendants DOES 1 through 10 are unknown or unidentified at this time.  Upon information and belief, each Doe is in some manner responsible for the wrongs alleged herein, and each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known to Plaintiff, Plaintiff will seek relief to amend this Complaint to show the true identities of each said DOE in place of their fictitious names as DOES 1 through 10 respectfully.

35.     Upon information and belief, at all times mentioned herein, Defendants, and each of them, was the agent, employee and servant of every other Defendant and each Defendant alleged herein acted in the course and scope of said agency, service and employment at all relevant times.

## IV.  INFORMATION COMMON TO ALL COUNTS

36.     CITY hired Plaintiff as a peace officer in or about November 1995.

37.     Plaintiff had been a long-standing member of the EMPOA and had worked to address labor, organizational and political concerns for same.

38.     Since at least 1997 or 1998, CITY has engaged in repeated unlawful actions, including, but not limited to, the following: DEPARTMEMT'S long-standing policy and practice of "shutting-down" graveyard and early morning shifts and not actively engaging in active law enforcement activity.  In fact, in or around 1997 or 1998, HERNANDEZ scolded Plaintiff and another officer for enforcing the law when they conducted a traffic stop in front of 11103 Garvey Avenue at the *On the Spot Sporting Goods* store between 3:30 a.m. and 4:00 a.m.

7

HERNANDEZ informed Plaintiff that he and other officers were trying to "Get some sleep," and Plaintiff's actions interfered with same.

39.  During the summer of 2000, Plaintiff and other police officers responded to a party-disturbance call at 4005 Eunice St.  Plaintiff pursued and arrested a subject for violation of Cal. Penal Code §§647(f) and 148(a).  The subject was taken to Greater El Monte Hospital for treatment of his injuries.  HERNANDEZ subsequently arrived at the hospital and told Plaintiff not to pursue arrest charges against the subject.  Plaintiff denied the request.  HERNANDEZ told Plaintiff that the subject was a personal acquaintance of his and a police informant.  Plaintiff still refused to grant HERNANDEZ' request.  HERNANDEZ was visibly upset by this and warned Plaintiff that he (HERNANDEZ) would never forget Plaintiff's refusal of his request nor Plaintiff's lack of ability to cooperate with his (Hernandez') unlawful request.

40.  In or around 2001-2003, Plaintiff had a consensual dating relationship with ARMSTRONG'S daughter, a City dispatcher, which lasted for several months.  Upon information and belief, ARMSTRONG has targeted and caused to be disciplined, harassed or terminated most DEPARTMENT officers who had had consensual dating relationships with his daughter, including Plaintiff.

41.  On or about April 1, 2006, DEPARTMENT administrators advised the officers that there would be an upcoming special election seeking passage of "Measure P" to address CITY'S sudden discovery of an alleged approximate nine million dollar deficit.  Administrators attended briefings, warned of lay-offs, strongly encouraged officers to actively push for the measure's success and utilized CITY resources to aggressively campaign in support of "Measure P."

42.  On or about April 13, 2006, while Plaintiff was serving as a Watch Commander, Plaintiff received a report that a fifteen-year old had been allegedly sexually assaulted by a CITY peace officer.  Plaintiff spoke with the Reporting

**FIRST AMENDED COMPLAINT**

Party, the victim's grandmother.  Plaintiff learned that the suspect was not a sworn police officer but was a 20-year civilian employee who worked in the Community Relations Office substation.  Plaintiff contacted PENNEY, one of the employee's supervisors.  PENNEY told Plaintiff, "I need you to handle this one for me buddy," and "tell her whatever you have to, to make her happy and go away" and "tell her that [the employee] will not be around her granddaughter or any other kids, we are trying to get him to resign." PENNEY informed there was a similar sex-related complaint currently pending against the employee and it would "look bad" if it appeared that CITY was attempting to "kiss off" the two separate complaints.

43.    Upon information and belief, the suspect-employee was a long-time close and personal friends with both WELDON and PENNEY.

44.    Plaintiff interviewed both the grandmother and fifteen year-old soon after receiving the report.  The victim reported that the sexual abuse occurred while the suspect employee supervised her when she performed community service; she claimed that the suspect employee had shown her pornography and touched her buttocks.  She advised that another sixteen year-old who was also assigned community service might also have been sexually abused by the suspect employee and that there might be other victims.  Soon after the interview, Plaintiff generated a Misconduct Complaint Memorandum and caused a Crime Report (#06CR-5143) to be generated.  Plaintiff was subsequently informed that that the allegations in his Crime Report were consistent with statements obtained during an administrative investigation that occurred earlier that evening.   Plaintiff forwarded a copy of the Crime Report and audiotape of the interview he had conducted of the reporting party and the victim with the Memorandum to SPERRY via interdepartmental mail.  Plaintiff also notified ARMSTRONG of the incident.

45.    On or about April 17, 2006, SPERRY contacted Plaintiff at home and demanded Plaintiff explain why he had not been notified about the crime report

9

**FIRST AMENDED COMPLAINT**

earlier.  Plaintiff explained that he notified ARMSTRONG directly because it was an Internal Affairs matter.  SCHUSTER then got on the telephone and demanded to know why Plaintiff had not handled the incident the way PENNEY had instructed.  Plaintiff told SCHUSTER that he did not believe PENNEY'S instructions were appropriate.  SCHUSTER then angrily replied, "Why didn't you just give them a complaint packet and leave?"  Plaintiff informed SCHUSTER that he had left a complaint packet with the victim after he concluded his interview.

46.     On or about May 5, 2006, during an EMPOA membership meeting, Plaintiff openly protested against using EMPOA funds to support "Measure P."

47.     On or about June 1, 2006, Detective Larry Fry, who was on-duty in an unmarked police vehicle, went to Plaintiff's residence and asked why Plaintiff had removed the bright-yellow "Measure P" lawn signs from Plaintiff 's front and back yards.  Plaintiff informed him that the signs had been placed there without his permission.  Fry said, "What am I supposed to tell the Chief?  He is going to be pissed because he knew the signs were there."

48.     On or about June 6, 2006 "Measure P" was defeated at the election.  CITY management and DEPARTMENT administrators continued to warn that major cutbacks and possible lay-offs were likely, however no such cutbacks or layoffs actually occurred.

49.     On or about July 1, 2006, Plaintiff, on behalf of EMPOA, helped acquire the services of Harvey Rose and Associates to conduct an audit of CITY'S budget and finances.  CITY was reluctant to provide necessary documents for the audit and caused multiple delays.  The audit finally commenced when CITY finally turned over the information.

50.     On or about September 26, 2006, Plaintiff met with ARMSTRONG.  Plaintiff  reported, *inter alia*, that: a) Lieutenant Robert ROACH had committed POBR violations during Internal Affairs investigations of EMPOA members; b)

**FIRST AMENDED COMPLAINT**

Hernandez, who was by then a DEPARTMENT Lieutenant, had, *inter alia*, improperly initiated baseless Internal Affairs complaints against EMPOA members, especially when the members had has some involvement with Hernandez' personal acquaintances; c) HERNANDEZ had acted unlawfully during the "Measure P" campaign against citizens which led to improper citizen arrests during the campaign period and ultimately an investigation of the DEPARTMENT by the Public Integrity Unit of the Los Angeles County District Attorneys Office; and d) he believed that the case against the civilian employee suspected of sexual abuse was being covered up the DEPARTMENT and that Plaintiff had received information that at least one, perhaps more Lieutenants, including PENNEY and HERNANDEZ, had made a directive that charges not be pursued.

51.     During the aforementioned conversation, ARMSTRONG told Plaintiff, "Perhaps the message got lost when we promoted you.  Although you are a technically sound supervisor, you were expected to be more of an extension of management."  Plaintiff told ARMSTRONG that he would be seeking a position on the EMPOA board in order to, *inter alia*, make the DEPARTMENT more accountable for its actions.  Armstrong told Plaintiff he would notify WELDON of their conference and Plaintiff's reports of myriad wrongdoing.

52.     On or about September 29, 2006, Plaintiff met with WELDON and ARMSTRONG.  WELDON told Plaintiff, "If I were twenty years younger we would go settle this out in the back parking lot."  WELDON implored Plaintiff to "…say what he needed to say."  Plaintiff validated the same reports of unlawful and improper behavior by DEPARTMENT senior officers that he had relayed to ARMSTRONG several days earlier.  Plaintiff and WELDON also discussed the sex abuse report.  WELDON also told Plaintiff that the DEPARTMENT did what it had to do to try and push the "Measure P" campaign through and that he had

heard on many occasions that Plaintiff was "…being vocal against the measure in open public forum." WELDON said, "If you and some of the others would have helped out more we could have won it" and called Plaintiff a "malcontent." Plaintiff replied he was properly voicing the concerns of EMPOA membership. WELDON also warned Plaintiff that he "…had better learn to get along with SANTOS."

53.    In November 2006, Plaintiff was nominated by the general membership as "Officer of the Year" and received such award in December 2006.

54.    On January 1, 2007, Plaintiff and other officers were elected to the EMPOA Board; Plaintiff was appointed Treasurer.  Upon information and belief, Plaintiff and the newly appointed members were deemed to be "anti-administration" by the DEPARTMENT.

55.    On January 20, 2007, the audit was completed and the findings were not consistent with prior statements by CITY management and DEPARTMENT administrators: the audit found no deficit but instead found that millions of dollars had been located in multiple redevelopment accounts.  The audit also found a pattern and practice of poor financial planning and lack of accountability for retrieving funds by CITY.

56.    In February 2007, ARMSTRONG attended the Board and Administration EMPOA meeting.  Among the concerns raised by the EMPOA membership were, *inter alia,* the upcoming audit results and possible use of recently acquired GPS equipment for disciplinary purposes against EMPOA members.  ARMSTRONG indicated that the GPS system was solely going to be used for "officer safety only" and not a disciplinary tool by supervisors.

57.    In late April 2007, HERNANDEZ initiated a baseless Internal Affairs investigation of Plaintiff for allegedly "sleeping on duty."  HERNANDEZ, ROACH and BUEHLER began surveiling Plaintiff every night during Plaintiff's

graveyard shift. Plaintiff was completely ignorant of such Internal Affairs investigation at that time, and did not learn of it until approximately September 10, 2007.

58. On or about July 1, 2007, Plaintiff placed in "Band 1" for upcoming open Lieutenant positions during Departmental promotional testing.

## IV. FACTS REGARDING ADVERSE EMPLOYMENT ACTION SUFFERED BY PLAINTIFF

59. On September 10, 2007, ROACH ordered Plaintiff to surrender his Department-issued cell phone and informed Plaintiff that he was the focus of an upcoming Internal Affairs investigation. ROACH also informed Plaintiff that the DEPARTMENT would be conducting a search of Plaintiff's locker. Even though Plaintiff asked ROACH to inform him of the nature of the Internal Affairs investigation or the reason for the locker search, ROACH refused to answer him.

60. On or about September 13, 2007, after a meeting with SCHUSTER and ROACH, Plaintiff was placed on paid administrative leave. Plaintiff again requested information concerning the nature of the Internal Affairs investigation or the reason for the locker search and was again denied such information.

61. Despite Plaintiff's repeated requests for information, it was not until November 2007 that the DEPARTMENT informed Plaintiff of the allegations against him. They included baseless and retaliatory charges against him, including, *inter alia*, sleeping on duty, early departure of duty times, playing baseball, and conduct unbecoming a police officer.

62. On or about January 8, 2008, Plaintiff was removed from duty pending an MRI of his lower back.

63. On or about February 6, 2008, Plaintiff was given a notice of "Intent to Terminate" and a *Skelly* package from Lieutenant Dan Buehler and Sergeant

**FIRST AMENDED COMPLAINT**

Steve Reneer while he was at Methodist Hospital. Plaintiff noted that the documents he and his attorney had previously and oft requested were not included. Plaintiff complained about this refusal and explained that if and when these documents were provided, he would be able to defend against the DEPARTMENT'S baseless accusations. WELDON and ARMSTRONG informed Plaintiff that they would look into the matter further before reaching any type of decision. Upon informational and belief they still refuse to do so.

64.    On or about March 13, 2008, Plaintiff's attorney, Andrew M. Dawson, Esq. was contacted by an attorney representing himself to be working on CITY Attorney's behalf, Greg Palmer, Esq.

65.    Upon information and belief, Palmer is employed by the law firm Jones & Mayer of Fullerton, CA in Orange County. Also, upon information and belief, Clarke Moseley, as El Monte City Attorney, delegated Palmer to represent the interests of CITY and the DEPARTMENT in negotiating with Plaintiff .

66.    On or about March 13, 2008, Palmer, as an employee and/or agent on behalf of CITY, made the following contractual offer to Plaintiff : Plaintiff would accept a medical retirement in lieu of any discipline arising out of his employment with CITY. Palmer informed Dawson that Plaintiff had until Monday, March 17, 2008 to accept CITY 's offer.

67.    On or about March 14, 2008, Plaintiff timely accepted CITY'S offer of medical retirement and relayed it to Palmer. Palmer then instructed Plaintiff to contact ARMSTRONG to begin the medical retirement process. Plaintiff did as Palmer instructed. ARMSTRONG then instructed Plaintiff to obtain a "Permanent & Stationary" report from a doctor and told Plaintiff that he would mail him a PERS retirement packet along with an e-mail with information and further instructions. ARMSTRONG also told Plaintiff, "The medical retirement was not

**FIRST AMENDED COMPLAINT**

my idea and was offered by WELDON.  I would have pursued the recommendation of Internal Affairs and proceeded with termination."

68.    On or about March 26, 2008, after Plaintiff had accepted CITY 's offer of medical retirement, ARMSTRONG informed Plaintiff that the medical retirement process was "...too lengthy and may take six to nine months." Armstrong purported to rescind CITY'S offer and told Plaintiff DEPARTMENT would proceed with his termination unless Plaintiff resigned.  Plaintiff refused to resign.

69.    On or about March 27, 2008, BUEHLER and Sergeant Reneer went to the Plaintiff's home and attempted to serve him with termination documents. Plaintiff gave BUEHLER a Notice of Appeal.

70.    On or about April 15, 2008 Plaintiff was unlawfully terminated.

71.    On or about September 25, 2008 Plaintiff timely submitted a Tort Claim concerning the aforementioned activities.

72.    To date, Defendants have not responded to the Tort Claim, even though Plaintiffs submitted a query requesting they respond to same.

73.    On or about March 13, 2008 Plaintiff timely submitted a Second Tort Claim concerning CITY'S bad faith failure and refusal to ensure that Plaintiff's PERS retirement was processed, a discovery Plaintiff became aware of on or about December 4, 2008.

74.    To date, Defendants have not responded to the Second Tort Claim,

75.    Plaintiff was not required to notify the California Labor Commission about his concerns.  See Exhibit A.

76.    Plaintiffs have complied with all other conditions precedent to the maintenance of this action.

**FIRST AMENDED COMPLAINT**

77.     Plaintiffs have no plain, speedy, nor adequate remedy at law to prevent future violations of their civil rights, and therefore seek extraordinary relief in the form of permanent injunctions, as hereafter described.

## FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION
### CAL. GOVERNMENT CODE § 12940 (a)
*AGAINST CITY ONLY*

78.     Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

79.     This action is brought pursuant to the California Fair Employment and Practices Act, §12940(a) of the Government Code, and the corresponding regulations of the California Fair Employment and Housing Commission, which prohibit discrimination against a person in the terms, conditions, or privileges of employment on the basis of the person's disability or medical condition.  In doing the things alleged herein, Defendants have unlawfully discriminated against Plaintiff and taken adverse action against him because of his disability and medical condition, in violation of Government Code §12940(a).  Plaintiff is a member of a protected category, was performing competently at his job, but was deprived of his right to a medical retirement because of discriminatory animus.  Defendants' conduct was intentional and designed to deprive Plaintiff of the rights and privileges to which his position entitled him.  Plaintiff's protected status was a pivotal factor in Defendant's decision to take adverse action against him.

80.     In doing the things alleged herein, CITY further violated §12940(k) by failing to take all reasonable steps to prevent discrimination and harassment.

81.     As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and

16

1  benefits and has been damaged in his capacity to earn his salary, serious injury to
2  his person, and has also suffered pain and suffering.

3      82.    The aforementioned acts directed towards the Plaintiff were carried
4  out by managerial and supervisory employees, and were directed and ratified by
5  Defendants, and each of them, with a conscious disregard of Plaintiff's rights and
6  with the intent to vex, injure and annoy Plaintiff, such as to constitute oppression,
7  fraud or malice.  In addition, Plaintiff seeks injunctive relief against Defendants
8  entitling him to all back pay and benefits, as well as a protective order against
9  future discrimination and harassment.

## SECOND CAUSE OF ACTION FOR RETALIATION
### CAL. LABOR CODE §§1101, 1102 and 1102.5
#### *AGAINST CITY ONLY*

13      83.    Plaintiff repeats and re-alleges all the preceding paragraphs as though
15  fully set out herein.

16      84.    California Labor Code §1102.5(b) states that an "…employer may
17  not retaliate against an employee for disclosing information to a government or law
18  enforcement agency, where the employee has reasonable cause to believe that the
19  information discloses a violation of state or federal statute, or a violation or
20  noncompliance with a state or federal rule or regulation."

22      85.    Plaintiff engaged in numerous instances of protected activity, and as a
23  result, was subjected to various adverse employment actions.

24      86.    §1102.5(c) states, "An employer may not retaliate against an
25  employee for refusing to participate in an activity that would result in a violation of
26  state or federal statute, or a violation or noncompliance with a state or federal rule
27  or regulation."  §1102.5(c) prevents the agency from retaliating against an
28  employee who refuses to participate in the employer's illegal schemes.

87.     California Labor Code §1104 states that for actions brought under §1102.5(b), "the employer is responsible for the acts of his managers, officers, agents, and employees." Here, CITY'S DEPARTMENT undertook all retaliatory actions in contravention of § 1102.5(b).

88.     California Labor Code §1105 allows an injured employee to recover for damages suffered due to violations of § 1102.5.

89.     As a proximate result of the wrongful conduct by Defendants, and pursuant to California Labor Code §§1102.5(b) and 1105, Plaintiff sustained general and special damages in an amount to be proven at trial.

90.     Plaintiff is entitled to attorney's fees pursuant to California Code of Civil Procedure § 1021.5 due to the significant benefit the public receives via Plaintiff's disclosures, and in the interest of justice.

## THIRD CAUSE OF ACTION FOR RALPH CIVIL RIGHTS ACT
### CAL. CIVIL CODE § 51.7.
### *AGAINST ALL DEFENDANTS*

91.     Plaintiff repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

92.     California Civil Code §51.7(a) provides, in relevant part: All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or . . . or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

18

**FIRST AMENDED COMPLAINT**

93.     Liability may also be found where a defendant "aids, incites, or conspires" in the denial of a right protected under Civil Code §51.7. in violation of Civil Code §52(b).

94.     Plaintiff is and was an active member of the EMPOA and is therefore a member of a group protected by Civil Code §51.7.

95.     DEFENDANTS threatened or committed violent acts against Plaintiff and/or his property interest in his employment with CITY because of his protected status under Civil Code §51.7.

96.     Motivating reasons for DEFENDANTS' aforementioned conduct included, *inter alia,* was Defendants' perception of Plaintiff's political affiliation with and labor organizational, political and social activities as a member of the EMPOA, and his position in a labor dispute with CITY and his refusal to engage in systemic CITY police corruption.

97.     Plaintiff was harmed by DEFENDANTS' conduct.

98.     DEFENDANTS' conduct as aforementioned was a substantial factor in causing Plaintiff's harm.

99.     As a result of the conduct described herein, PLAINTIFF has and will sustain attorneys' fees and costs in an amount according to proof.

100.   The aforesaid acts directed towards Plaintiff were carried out with a conscious disregard of Plaintiff's rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud or malice pursuant to Cal. Civ. Code §3294, entitling Plaintiff to punitive damages against the non-municipal DEFENDANTS in a sum which is an amount appropriate to punish and set an example of the individual DEFENDANTS and to deter such conduct in the future, and to set an example for others.

**FIRST AMENDED COMPLAINT**

# FOURTH CAUSE OF ACTION FOR BANE ACT VIOLATIONS
## CAL. CIVIL CODE § 52.1
### *AGAINST ALL DEFENDANTS*

101.   Plaintiff repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

102.   California Civil Code §52.1 (b) provides: Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

103.   Plaintiff was an elected or appointed member of EMPOA and is therefore a member of a group protected by Civil Code §52.1.

104.   DEFENDANTS interfered and/or attempted to interfere with Plaintiff's constitutional and statutory rights, including *inter alia*, the right to be free from unlawful retaliation, to participate in labor organizational, social and political activities, and to exercise his free speech rights without being targeted for retaliation by threatening or committing violent acts against his property interest.

105.   Plaintiff reasonably believed that if he exercised his right to, *inter alia*, fully participate in the City of El Monte election process and to vote the way he desired therein, without DEFENDANTS undue and unlawful influence, DEFENDANTS would commit violence against him and/or his property interest right to public employment to prevent Plaintiff from exercising his rights as aforementioned or retaliate against Plaintiff for having exercised same.

106.   Plaintiff was harmed by DEFENDANTS' aforementioned conduct.

20

107.   DEFENDANTS' conduct was a substantial factor in causing Plaintiff's harm.

108.   As a result of the conduct described herein, Plaintiff has and will sustain attorneys' fees and costs in an amount according to proof.

109.   The aforesaid acts directed towards Plaintiff were carried out with a conscious disregard of Plaintiff's rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud or malice pursuant to Cal. Civ. Code §3294, entitling Plaintiff to punitive damages against the non-municipal DEFENDANTS in a sum which is an amount appropriate to punish and set an example of the individual DEFENDANTS and to deter such conduct in the future, and to set an example for others.

## FIFTH CAUSE OF ACTION FOR UNION-BUSTING
### CAL. GOVT. CODE §3302, 3309.5, 3502, 3506, 3508
### *AGAINST ALL DEFENDANTS*

110.   Plaintiff repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

111.   In doing the things alleged herein, DEFENDANTS violated Plaintiff's rights under Cal. Govt. Code §§3302, 3309.5 that prohibit a public safety employer from interfering with political activities of its public safety officers.

112.   DEFENDANTS further violated Govt. Code §3502.1 by taking punitive action against Plaintiff for lawful union activity.

113.   DEFENDANTS further violated Govt. Code §§3502, 3506 by interfering with, intimidating, restraining, coercing or discriminating against Plaintiffs because of their exercise of their lawful rights to form, join, and participate in employee organizations.

21

114.   DEFENDANTS further violated Govt. Code §3508 by prohibiting Plaintiff from participating in employee organizations composed solely of peace officers.

115.   Plaintiff was harmed by DEFENDANTS' aforementioned conduct.

116.   DEFENDANTS' conduct was a substantial factor in causing Plaintiff's harm.

117.   As a result of the conduct described herein, Plaintiff has and will sustain attorneys' fees and costs in an amount according to proof.

118.   The aforesaid acts directed towards Plaintiff were carried out with a conscious disregard of Plaintiff's rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud or malice pursuant to Cal. Civ. Code §3294, entitling Plaintiff to punitive damages against the non-municipal DEFENDANTS in a sum which is an amount appropriate to punish and set an example of the individual DEFENDANTS and to deter such conduct in the future, and to set an example for others.

## SIXTH CAUSE OF ACTION FOR FREE SPEECH VIOLATIONS
### CALIFORNIA CONSTITUTION, ARTICLE I, §§2, 3,
### *AGAINST ALL DEFENDANTS*

119.   Plaintiff repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

120.   In doing the things alleged herein, Defendants violated the rights of Plaintiff under the Cal. Const., Art. I, §§2, 3, by restraining Plaintiff's liberty of speech and assembly by taking adverse employment actions against Plaintiff solely in retaliation for engaging the aforementioned acts of free speech and assembly.

121.   Plaintiff was harmed by DEFENDANTS' aforementioned conduct.

**FIRST AMENDED COMPLAINT**

122.   DEFENDANTS' conduct was a substantial factor in causing Plaintiff's harm.

123.   As a result of the conduct described herein, Plaintiff has and will sustain attorneys' fees and costs in an amount according to proof.

124.   The aforesaid acts directed towards Plaintiff were carried out with a conscious disregard of Plaintiff's rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud or malice pursuant to Cal. Civ. Code §3294, entitling Plaintiff to punitive damages against the non-municipal DEFENDANTS in a sum which is an amount appropriate to punish and set an example of the individual DEFENDANTS and to deter such conduct in the future, and to set an example for others.

## SEVENTH CAUSE OF ACTION FOR AMERICANS DISABILITIES ACT
### 42 U.S.C. §1201, *et. seq.*
### *AGAINST ALL DEFENDANTS*

125.   Plaintiff repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

126.   In doing the things alleged herein, Defendants attempted to and did in fact interfere with Plaintiff's state and federal rights based on the federal constitution to be free from discrimination based on disability.

127.   Plaintiff was harmed by DEFENDANTS' aforementioned conduct.

128.   DEFENDANTS' conduct was a substantial factor in causing Plaintiff's harm.

129.   As a result of the conduct described herein, Plaintiff has and will sustain attorneys' fees and costs in an amount according to proof.

130.   The aforesaid acts directed towards Plaintiff were carried out with a

1   conscious disregard of Plaintiff's rights and with the intent to vex, injure, and
2   annoy Plaintiff, such as to constitute oppression, fraud or malice pursuant to Cal.
3   Civ. Code §3294, entitling Plaintiff to punitive damages against the non-municipal
4   DEFENDANTS in a sum which is an amount appropriate to punish and set an
5   example of the individual DEFENDANTS and to deter such conduct in the future,
6   and to set an example for others.
7
8   **EIGHTH CAUSE OF ACTION CIVIL RIGHTS AND FREE SPEECH**
    **42 U.S.C. §1983**
9   *AGAINST ALL DEFENDANTS*
10
11      131.   Plaintiff hereby incorporates each and every preceding paragraph as
12   though set forth in full here.
13      132.   As a direct result of the Plaintiff exercising his constitutional right to
14   free speech the Defendants took the aforementioned adverse actions against him.
15   Absent said protected speech, Defendants would not have taken said actions.  At
16   all times mentioned herein, Plaintiff's speech activities were not taken pursuant to
17   his official job responsibilities.
18      133.   The various acts of intimidation, reprisal, retaliation, suppression
19   and/or restraint exercised by Defendants against Plaintiff have created a chilling
20   effect on his legitimate political, social and organizational speech by creating fear,
21   hesitation, hostility and other destructive responses.
22
23      134.   In doing the things alleged herein, Defendants, and each of them,
24   violated the rights of Plaintiff under the First and Fourteenth Amendments to the
25   United States Constitution to free expression.  Specifically, Defendants have taken
26   adverse action against Plaintiff in direct retaliation for, and in response to the
27   various protected activities of Plaintiffs.  The acts and omissions of Defendants,
28   and each of them, were done by Defendants under color of state law in their

24

**FIRST AMENDED COMPLAINT**

capacity as a municipality chartered under state law, and as policy making authorities to which Defendant City of El Monte delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.  CITY'S official policy makers took the acts and omissions described above as members charged with such responsibility. It was or should have been plainly obvious to any reasonable policy making official of CITY that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights.  In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights.  General and special damages are sought according to proof.  Punitive damages are sought against the individual defendant, according to proof.

## XI.  PRAYER

WHEREFORE, PLAINTIFF prays:

1.      For general, special, compensatory (including lost wages and lost employee benefits), exemplary and punitive damages according to proof;

2.      For costs of suit incurred herein, as allowed by law;

3.      For reasonable attorneys' fees under 42 U.S.C. §1988, Cal. Civ. Code §3294, Cal. Civ. Code §52(b), Cal. Civ. Code §52.1(h) or as otherwise allowed by law;

4.      For a civil penalty of $25,000 pursuant to Civil Code §52;

5.      For an award of interest, including prejudgment interest, at the legal rate, as allowed by law;

25

6.    For injunctive relief; and

7.    For any and all other appropriate relief the Court deems necessary.

Dated:  May 11, 2009                    Respectfully Submitted,

                                        LACKIE, DAMMEIER & MCGILL APC

                               By:      _Rana M. Kawar_____

                                        Michael A. McGill, Esq.
                                        Rana M. Kawar, Esq.
                                        *Attorneys For Plaintiff, Michael Providente*

FIRST AMENDED COMPLAINT

1

## DEMAND FOR TRIAL BY JURY

2          PLAINTIFF hereby demands a jury trial under F.R. Civ. P., Rule 38 and C.D.

3    Cal. Rule 38.

4

5    Dated:  May 11, 2009                    Respectfully Submitted,

6                                            LACKIE, DAMMEIER & MCGILL APC

7

8                          By:    *Rana M. Kawar*

9                                            Michael A. McGill, Esq.

10                                           Rana M. Kawar, Esq.
                                             *Attorneys for Plaintiff, Michael Providente*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

# PROOF OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 367 North Second Ave., Upland, California 91786.

On **September 3, 2009** served the following **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL** on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope addressed as follows:

| |
|---|
| *Attorneys for Defendants, City of El Monte et al.*<br>Jon F. Hamilton, Esq.<br>FERGUSON, PRAET & SHERMAN<br>1631 East 18th Street<br>Santa Ana, CA 92705-7101<br>Tel: (714) 953-5300<br>Fax: (714) 953-1143 |

[ ]   I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Upland, California.

[ ]   By Personal Service, I caused such envelope to be delivered by hand to the above addressee(s).

[X]   By overnight courier, I caused the above-referenced document(s) to be delivered to an overnight courier service (UPS), for delivery to the above addressee(s).

[ ]   By facsimile machine, I caused the above-referenced document(s) to be transmitted to the above-named persons(s) at the above telecopy number:

[ ]   By Certified Mail:

Executed **September 3, 2009** at Upland, California.

[ X ] (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

ARLENE JUAREZ